MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2023 ME 75
Docket:        Cum-23-47
Argued:        September 13, 2023
Decided:       December 14, 2023

Panel:         STANFILL, C.J., and MEAD, JABAR, HORTON, CONNORS, LAWRENCE, and DOUGLAS, JJ.

JOHN R. LUONGO

v.

MICHAEL A. LUONGO JR.

MEAD, J.

[¶1]  John R. Luongo appeals from a judgment of the Superior Court (Cumberland County, *MG Kennedy, J.*) dividing the property of his mother's estate between him and his brother, Michael A. Luongo Jr.  John makes several arguments contending that the Superior Court erred in how it divided the estate.  John further argues that the Superior Court (*L. Walker, J.*) erred in dismissing two counts of his complaint after concluding it could not exercise personal jurisdiction over Michael.

[¶2]  Because we determine that the Superior Court did not have subject matter jurisdiction to distribute assets under the will and a related trust, we vacate the court's order distributing the assets of the estate pursuant to Count 2 of the amended counterclaim, alleging conversion.  Furthermore, we agree that

the court lacked personal jurisdiction over Michael on Counts 1 and 3 of the complaint, and we affirm their dismissal.

## I. BACKGROUND

[¶3] Marie A.L. Jacobson executed her last will and testament and created the Marie A.L. Jacobson Trust in 1983. Both instruments were written and executed pursuant to Massachusetts law. Marie's sons, John and Michael, are co-trustees and co-beneficiaries of the trust and co-executors and devisees of the will. On December 3, 2014, while a resident of Gray, Maine, Marie died and was survived by her sons and two granddaughters who are the children of Marie's daughter, who predeceased her. John lived in Maine next door to Marie and was her caregiver for years; Michael is a resident of Massachusetts.

[¶4] Marie's will directed that her "tangible personal property [be] appraised and then distributed in shares of equal value between or among, as the case may be, my children then living," with the children taking turns selecting items "on the basis of age so that the oldest first selects . . . until all the articles are disposed of or [the] children decline making further selections." The remaining personal property and all remaining property of Marie's estate was devised and bequeathed to Marie's trust.

[¶5] The distribution of property began after Marie's death but was not

finalized when the relationship between the brothers broke down. On January 25, 2017, John filed a complaint in the Superior Court seeking termination of the trust and reimbursement of funeral and other expenses (Count 1); alleging fraud in the inducement related to $70,000 of payments John made to Michael and Michael's family (Count 2); and alleging a violation of the Maine Uniform Prudent Investor Act, 18-B M.R.S. §§ 901-08 (2023), (Count 3). In his answer, Michael asserted the defenses of lack of personal jurisdiction and lack of subject matter jurisdiction, and proffered a counterclaim alleging tortious interference with an expectancy. Michael filed a motion to dismiss John's claims, asserting that the court did not have personal jurisdiction over him or subject matter jurisdiction over Marie's trust and that John failed to plead the fraud claim with particularity.

[¶6] The court (*L. Walker, J.*) held a hearing on the motion to dismiss on September 7, 2017, and granted the motion as it related to Marie's trust (Counts 1 and 3), but denied the motion on the fraud claim (Count 2). Relying on the terms of Marie's trust, the court found that the trust designated Massachusetts as its principal place of administration and that the principal place of administration was never transferred to Maine. Because John did not follow the process outlined in 18-B M.R.S. § 108 (2023) to transfer the trust's

4

place of administration, the court found it did not have personal jurisdiction over Michael or subject matter jurisdiction to adjudicate the claims.

[¶7]   Michael then amended his counterclaim to include a claim of conversion.  The conversion claim sought to recover the personal property that was owned by Marie and, according to Michael, immediately passed to him under Marie's will upon her death.  Michael attached to the counterclaim an "Affidavit for Collection of Personal Property in Small Estates Pursuant to 18-A M.R.S. § 3-1201; Demand for Delivery of Property."[1]  On June 5, 2018, John filed a second amended complaint, adding allegations of negligent misrepresentation (Count 4) and unjust enrichment (Count 5), both related to Count 2 of the original complaint and the $70,000 paid to Michael.[2]   On June 1, 2022, the parties agreed to dismiss Michael's counterclaim for tortious interference with an expectancy.

[¶8]  The court (*MG Kennedy, J.*) held a bench trial on June 6 and 7, 2022. At issue during the trial were the three counts of John's complaint related to the $70,000 he paid to Michael and Michael's counterclaim for conversion.  After

---

[1] The statute cited in this pleading has since been repealed and replaced.  *See* P.L. 2017, ch. 402, §§ A-1, A-2; P.L. 2019, ch. 417, § B-14 (effective Sept. 1, 2019) (codified at 18-C M.R.S. § 3-1201 (2023)).

[2] The record does not appear to show that John filed an answer to the amended counterclaim.

trial, and before any decision was rendered, the court encouraged the parties to select and divide Marie's remaining personal property before obtaining appraisals for the court's consideration in determining the property distribution. John and Michael were able to agree on the distribution of much, but not all, of Marie's personal property. On September 28, 2022, the court issued an order finding that there was insufficient evidence to find in John's favor on his Counts 2, 4, and 5. The court then apparently resolved the counterclaim for conversion by distributing the remaining estate property between John and Michael and ordered that the property be turned over to the designated beneficiary no later than thirty days from the date of the order. The court made no findings concerning who had had rightful possession of the property, conversion, or damages. John timely appealed.

## II. DISCUSSION

[¶9]    The arguments John raises on appeal concern Michael's counterclaim for conversion and the dismissal of Counts 1 and 3 of his complaint related to Marie's trust. John does not appeal the resolution of his claims in Counts 2, 4, and 5 of the complaint regarding the $70,000 payments.

### A.    Subject Matter Jurisdiction

[¶10]  Although not raised by John, there is a preliminary question of

6

whether the Superior Court had subject matter jurisdiction to resolve Michael's conversion counterclaim.

[¶11] "[T]he existence of subject matter jurisdiction can be challenged at any time, even *sua sponte* by an appellate court . . . ." *Tomer v. Me. Hum. Rts. Comm'n*, 2008 ME 190, ¶ 8 n.3, 962 A.2d 335. It is established that "the authority to resolve the contest over the distribution of assets under a will rests solely with the Probate Court." *Zani v. Zani*, 2023 ME 42, ¶ 14, 299 A.3d 9 (quoting *Plimpton v. Gerrard*, 668 A.2d 882, 888 (Me. 1995)).

[¶12] The matter on appeal is plainly and unquestionably a contest over administration of a trust and the distribution of assets under a will and related trust. The Superior Court explicitly treated Michael's counterclaim for conversion as such, holding that its resolution entailed "specifically, the distribution and division of [Marie's] remaining property."

[¶13] Michael's effort to circumvent the Probate Court's exclusive jurisdiction over the administration and distribution of property pursuant to a will and trust by filing a claim for conversion in the Superior Court cannot vest the Superior Court with concurrent subject matter jurisdiction. Accordingly, the court's heroic efforts to carve out a fair and equitable solution to an extended family dispute by awarding particular items to each party exceeded

its subject matter jurisdiction. We must therefore vacate the judgment on the conversion counterclaim. Additionally, any further proceedings regarding the distribution of estate assets pursuant to Marie's will and trust, if the matter is not resolved by the parties, must occur in a court of probate.

**B.    Personal Jurisdiction**

[¶14]   John also contends that the trial court (*L. Walker*, J.) erred in determining it could not exercise personal jurisdiction over Michael on claims related to Marie's trust.

[¶15] "We review de novo whether personal jurisdiction exists." *Premier Diagnostics v. Invitae Corp.*, 2023 ME 1, ¶ 13, 288 A.3d 791 (quotation marks omitted). Personal jurisdiction can be either general or specific, in that a state court may exercise general personal jurisdiction over an individual domiciled in the state or may exercise specific personal jurisdiction over a defendant if the case arises out of or relates to the defendant's contacts with the forum. *Id.* ¶¶ 15, 17 (citing *Bristol-Myers Squibb Co. v. Super. Ct.*, 582 U.S. 255, 262 (2017); *Daimler AG v. Bauman*, 571 U.S. 117, 127, 137 (2014)).

[¶16]  The Maine Uniform Trust Code provides that a trustee is subject to specific personal jurisdiction in Maine if the trustee accepts trusteeship of a trust having its principal place of administration in Maine or moves a trust's

principal place of administration to Maine. 18-B M.R.S. § 202(1) (2023). Furthermore, a beneficiary of a trust is subject to specific personal jurisdiction in Maine if the trust's principal place of administration is in Maine. *Id.* § 202(2).

[¶17] Michael is not a resident of Maine and so is not subject to general personal jurisdiction in Maine. Further, for the court to have specific personal jurisdiction over Michael as a trustee and beneficiary, Michael must have accepted trusteeship of Marie's trust while its principal place of administration was in Maine or the trustees must have moved the trust's principal place of administration to Maine. *Id.* § 202(1)-(2). However, Marie's trust was established as a Massachusetts trust with its principal place of administration in Massachusetts.[3] And, although a trustee "may transfer the trust's principal place of administration," 18-B M.R.S. § 108(3), it is undisputed that the process to transfer the trust's administration was not completed by either trustee.

[¶18] Accordingly, the trial court correctly concluded that it did not have personal jurisdiction over Michael for claims related to Marie's trust.

---

[3] Marie's trust clearly provides that it "is a Massachusetts Trust . . . and is to be governed and construed and administered according to its laws and shall continue to be governed and construed and administered though administered elsewhere in the United States." Maine law provides that the "terms of a trust designating the principal place of administration are valid and controlling if: (A) . . . a trustee is a resident of the designated jurisdiction; or (B) [a]ll or part of the administration occurs in the designated jurisdiction." 18-B M.R.S. § 108(1) (2023). Michael is a resident of Massachusetts.

The entry is:

> Judgment dismissing Counts 1 and 3 of John's complaint affirmed. Judgment vacated in all other respects. Remanded for dismissal of the remaining counts of John's complaint and Michael's counterclaim for conversion.

---

John S. Campbell, Esq. (orally), Campbell & Associates, P.A., Portland, for appellant John R. Luongo

Roy T. Pierce, Esq. (orally), Jensen Baird, Portland, for appellee Michael A. Luongo Jr.

Cumberland County Superior Court docket number CV-2017-37
FOR CLERK REFERENCE ONLY